IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| LEONARD SMITH, on Behalf of Himself and All Others Similarly Situated<br><br>    Plaintiff,<br><br>    vs.<br><br>NEW ENGLAND MOTOR FREIGHT, INC.<br><br>    Defendant. | CASE NO. 2:12-CV-03559<br><br>UNITED STATES JUDGE WILLIAM J. MARTINI<br><br>MAGISTRATE JUDGE MARK FALK |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, CERTIFICATION OF A CLASS FOR THE PURPOSES OF SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE**

Now come the Parties, by and through counsel, and hereby move the Court pursuant to Federal Rule of Civil Procedure 23 for preliminary approval of the class settlement, certification of a class for the purposes of settlement, and approval of form and manner of notice. A memorandum in support is attached hereto and incorporated herein.

          Respectfully Submitted,

          **STUMPHAUZER | O'TOOLE**

    By:     */s/ Anthony R. Pecora*
          Anthony R. Pecora (0069660)
          Matthew A. Dooley (0081482)
          5455 Detroit Road
          Sheffield Village, Ohio  44054
          Telephone   (440) 930-4001
          Fax:          (440) 934-7208
          Email:       apecora@sheffieldlaw.com
                          mdooley@sheffieldlaw.com

          *Counsel for Plaintiff and the putative class*

**CONNELL FOLEY**

By: ____/s/ Liza M. Walsh_____
    Liza M. Walsh
    Katelyn O'Reilly
    85 Livingston Avenue
    Roseland, New Jersey
    Telephone:   (973) 535-0500
    Facsimile:    (973) 535-9217
    E-mail:      lwalsh@connellfoley.com

    Jack L. Kolpen
    Irina B. Elgart
    **FOX ROTHSCHILD LLP**
    Princeton Pike Corporate Center
    997 Lenox Drive, Building Three
    Lawrenceville, NJ 08648-2311
    Telephone:   (609) 896-3600
    Facsimile:    (609) 896-1469
    E-mail:      jkolpen@foxrothschild.com

    *Counsel for Defendant New England Motor Freight, Inc.*

## MEMORANDUM IN SUPPORT[1]

### STATEMENT OF FACTS

On March 3, 2012, Plaintiff, Leonard Smith ("Plaintiff" or "Smith") commenced this litigation against New England Motor Freight, Inc. ("Defendant" or "NEMF") on behalf of himself and all other similarly situated individuals (collectively "Class Members") alleging certain violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a-1681x ("Civil Action").  Specifically, Smith alleged that in the course of procuring consumer reports for employment purposes, NEMF negligently and/or willfully violated 15 U.S.C. §§ 1681b(b)(2)(A)(i) and 1681b(b)(2)(A)(ii) by failing to (1) provide Smith and Class Members with a clear, conspicuous and stand-alone disclosure, and (2) to obtain a valid authorization in writing to procure a consumer report for employment purposes.  Further, Smith alleged that NEMF violated 15 U.S.C. §§ 1681b(b)(3)(A)(i) and 1681b(b)(3)(A)(ii) by failing to provide (1) a copy of the consumer report used to make an employment decision before taking adverse action that was based in whole or in part on that report and (2) a  copy of the summary of rights required by this section before taking adverse action that was based in whole or in part on the consumer report.  NEMF denied Smith's allegations and maintains that it did not violate the FCRA or, at most, that any violation was technical in nature and not willful and/or negligent.

Following the filing of the Civil Action, the Settling Parties engaged in informal discovery through which NEMF provided Class Counsel with information concerning among other things, the consumers who were the subject of consumer reports during the Class Period. Subsequently, the Settling Parties participated in multiple extensive settlement negotiations

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning given in the Stipulation of Settlement (ECF No. 47).

3

mediated before the Honorable Mark Falk, U.S.M.J. *Mazon v. Wells Fargo Bank, N.A.*, No. 10-cv-700, 2011 U.S. Dist. LEXIS 143629, *5 (D.N.J. Dec. 14, 2011) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel.") (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting Manual for Complex Litigation, Third, § 30.42 (West 1995) (A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery")); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, at *4 (S.D.N.Y. 2011) (parties were entitled to a presumption of fairness where mediator facilitated arms length negotiations); *Hall v. AT&T Mobility LLC*, No. 07-cv-5325, 2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010) (noting that involvement of "mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties") (citing *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 U.S. Dist. LEXIS 111711, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)).

Although the Parties reached a tentative agreement during the in-person settlement conference on March 10, 2013, a second in-person conference on July 26, 2013 was necessary to resolve contentious issues surrounding the terms of the settlement agreement. The Settling Parties ultimately reached an accord on that date.

Smith believes that the claims asserted in the Civil Action have merit, and that if the case did not settle, he would prevail at trial. NEMF, on the other hand, believes that if the case proceeded to trial, that NEMF would prevail. Regardless, it is understood that if the case proceeded to trial and Smith failed to prove that NEMF willfully violated the FCRA, that Smith's claims would fail, and he and any potential class member would not be entitled to any

monetary payment. However, if Smith did prevail at trial, then he and any potential class member would be entitled to statutory damages between $100.00 and $1000.00, plus attorney's fees and other relief under the FCRA. In light of the uncertain outcome and the risk of further litigation, including proceedings involving class certification, the Settling Parties entered into a Stipulation of Settlement and agreed to seek certification of a class for settlement purposes only.

## THE PROPOSED SETTLEMENT

The provisions of the Stipulation of Settlement provide for cash disbursements to Class Members, a *cy pres* trust, an Incentive Award to Smith as class representative, and an attorney fee within the acceptable range for matters of this type. The salient terms are as follows:

- NEMF agreed to pay a total of Eight Hundred Seventy Thousand Five Hundred Dollars ($870,500.00) (the "Settlement Funds"), from which Class Members shall be paid as follows:

    - **Preliminary Settlement Class (Notice and Authorization Class)** – a pro rata sum not to exceed Three Hundred Thirty-Three Dollars ($333.00), calculated after a deduction from the Settlement Funds has been made for the payment of attorney fees, an Incentive Award, and the cost of notice and administration of the Settlement;

    - **Preliminary Settlement Sub-Class (Pre-Adverse Action)** – a pro rata sum not to exceed Eight Hundred Dollars ($800.00), calculated after a deduction from the Settlement Funds has been made for the payment of attorney fees, an Incentive Award, and the cost of notice and administration of the Settlement;

- NEMF shall not oppose Class Counsel's petition for attorney's fees for an amount not to exceed thirty percent (30%) of the Settlement Funds;

- NEMF shall not oppose Smith's petition for an Incentive Award for an amount equal to $5,000;

- The cost of notice and administration of the settlement shall be paid from the Settlement Funds;

- In the event that settlement checks mailed to Class Members are returned as undeliverable or otherwise not cashed before becoming stale or void, and/or that the Settlement Funds are not completely distributed, the remaining sum shall be

5

> distributed in the following order: (a) an amount not to exceed Two Hundred Thousand Dollars ($200,000.00) shall be divided equally among the following two *cy pres* beneficiaries: (1) National Consumer Law Center; and (2) Fair Share Housing Center of New Jersey; and (b) if after the initial disbursement to *cy pres* beneficiaries, funds remain, then seventy-five percent (75%) of such funds shall be disbursed back to the entity that funded the Settlement Funds, with the remaining twenty-five percent (25%) distributed equally to the two *cy pres* beneficiaries described in section (a) above.

## CLASS CERTIFICATION

Federal Rule of Civil Procedure 23(a) requires that in order for a class action to proceed it must be demonstrated that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and, (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23. This rule authorizes certification if the four prerequisites of Rule 23(a) are met, the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed R. Civ. P. 23(b)(3); *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

In *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 417 (6th Cir. 2012), the Sixth Circuit observed that the Supreme Court in *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), "clarified that courts may inquire preliminarily into the merits of a suit to determine if class certification is proper, although courts need not resolve all factual disputes on the merits." The ultimate merits of Smith's case, however, are immaterial for purposes of certifying settlement so long as the settlement is fair, adequate, and reasonable. FED. R. CIV. P. 23(e)(2); *see, e.g.*, *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008).

Regardless, the Court should resolve any doubt regarding the propriety of certification in favor of allowing certification.  *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985), *cert. denied*, 474 U.S. 946 (1985).  *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1968).  *In re Data Corp. Sec. Litig.*, 116 F.R.D. 216 (D. Minn. 1986); *In re Folding Cartons Antitrust Litig.*, 75 F.R.D. 727 (N.D. Ill. 1977); *see also Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 327 (W.D. Mich. 2000).

District courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class.  *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372 (1982).  While the court must conduct a rigorous analysis as to whether the standards of Rule 23 are met, the elements of typicality, commonality, and adequacy of representation tend to merge.  *E.g.*, *Dukes*, 131 S.Ct. at 2551, n.5; *In re Whirlpool*, 678 F.3d at 418.  Furthermore, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

At the same time, courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties . . . and promote judicial efficiency.'"  *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989), cert denied sub nom; *see Barnes v. United States,* 68 Fed. Cl. 492 (2005) (quoting *Gunnells v. Healthplan Svcs.,* Inc., 348 F.3d 417, 424 (4th Cir. 2003) (citation omitted))*; Anderson v. Aetna Cas. & Sur. Co.*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); *see also Jeffreys v. Commc'ns Workers*, 212 F.R.D. 320, 322 (E.D. Va. 2003).

7

A.     **Numerosity**

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Delgado v. McTighe*, No. 76-cv-1206, 1981 U.S. Dist. LEXIS 13366, *7 (E.D. Pa. July 2, 1981); *see also Talbott v. GC Servs., Ltd. P'shp.*, 191 F.R.D. 99, 102 (W.D. Va. 2000); *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312 (4th Cir. 1978).  However, "impracticable does not mean impossible." *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 289 (E.D. Pa. 2012) (*citing* 1 A. Conte & H. Newberg, *Class Actions* § 3:14 (5th ed. 2011)).  "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986).  There is no set minimum number of potential class members that fulfills the numerosity requirement.  *See, e.g.*, *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006); *Feret v. CoreStates Fin. Corp.*, No. 97-cv-6759, 1998 U.S. Dist. LEXIS 12734, *19 (E.D. Pa. Aug. 18, 1998), *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404, 1407-08 (D. Md. 1984) (stating that "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical").  The fact that the precise number of Class Members cannot be determined at the certification stage does not preclude class certification, as the court may rely on reasonable estimates of the number of class members. *See Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990); *Vargas v. Calabrese*, 634 F. Supp. 910, 918 (D.N.J. 1986); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 137 (D.N.J. 1984), *rev'd on other grounds*, 843 F.2d 1537 (3d Cir. 1988), *cert. denied sub nom., Vitiello v. I. Kahlowsky & Co.*, 488 U.S. 849, 102 L. Ed. 2d 103, 109 S. Ct. 131 (1988); *Peil*, 86 F.R.D. at 365 n.5.  However, where the class numbers 25 persons or more,

joinder is usually impracticable. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient).

At this time, the Settling Parties estimate that the Settlement Class consists of at least 7,300 persons about whom NEMF procured a Consumer Report and/or relied upon or used a Consumer Report in the course of evaluating Class Members for employment between March 7, 2007 and the present. The sheer size of this class is sufficiently large to determine that numerosity has been satisfied and joinder of these Class Members' claims is not possible. As such, the first prong of the certification test has been met with regard to the class to be represented under the FCRA.

B.    **Common Questions of Law or Fact**

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there be a common question of law or fact. To satisfy the commonality requirement, plaintiffs must show the existence of at least one question of law or fact common to the class. FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).

Commonality is a liberal standard, and the fact that there are some factual variances in individual grievances among class members does not defeat commonality. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Further, "'[i]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members.'" *Weisfeld v. Sun Chem.,* 210 F.R.D. 136, 140 (D.N.J. 2002) (quoting *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993)). The commonality requirement requires that the class present dispositive questions, which will propel the case through the system. *See Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990); *Lienhart v. Dryvit Sys., Inc.*,

9

255 F.3d 138, 146 (4th Cir. 2001).  The typicality and commonality requirements ensure that only those plaintiffs who can advance the same factual and legal arguments will be grouped together as a class.  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998).

The class to be represented consists of those individuals about whom NEMF procured a Consumer Report and/or relied upon or used a Consumer Report in the course of evaluating Class Members for employment between March 7, 2007 and the period of preliminary approval. Pursuant to the FCRA, each of these Class Members is entitled to a clear, conspicuous written disclosure that consists solely of the disclosure and a copy of the Consumer Report used to make employment decisions, pursuant to 15 U.S.C. § 1681b(b)(2)(A) and/or 15 U.S.C. § 1681b(b)(3)(A). The Class Members share predominant questions of law under the above-described common facts, which predominate over all individual issues and clearly propel this litigation forward to a resolution.  As such, the commonality prong of Rule 23 is satisfied.

    **C.**    **Typical Claims**

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the named plaintiff be typical of the claims of the class.  It has been noted that "the premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Semenko v. Wendy's Int'l, Inc.,* No. 12-cv-0836, 2013 U.S. Dist. LEXIS 52582 (W.D. Pa. Apr. 12, 2013) *(*quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).  The concepts of commonality and typicality are broadly defined and tend to merge. *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (citing *Baby Neal*, 43 F.3d at 56).  Nonetheless, the typicality requirement remains its own separate inquiry, *Broussard*, *supra,* and "a class representative must be part of the class and possess the same

interest and suffer the same injury as the class members." *Lienhart*, 255 F.3d at 146. The typicality requirement is met if a claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." 1 Newberg on Class Actions § 3.13, at 3-76; *see also Georgine v. Amchem Prods., Inc.*, 157 F.R.D. 246, 316 (E.D. Pa. 1994).

In this case, there is only a single claim for decision by the Court for Smith as well as the Class Members. The scope of Smith's claim is coextensive with those of the Class Members; his claims are *identical* to those of the Class Members and his interests are squarely aligned with them. In particular, Smith's claims arise out of the exact same practice which guided NEMF's actions in the course of obtaining and using consumer reports to make employment decisions during the Class Period. As such, Smith's claims are *typical* of the common claims held by the class, and Rule 23's commonality requirement has been met as to the Class to be certified.

### D.   Adequate Representation

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This prerequisite has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012) (citing *Comm. Bank I*, 418 F.3d at 303). A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

The underlying premise of a class action is that litigation by representative parties adjudicates the rights of all class members, and therefore, basic due process requires that named

11

plaintiffs possess undivided loyalties to absent class members. *Broussard,* 155 F.3d at 338 (*citing e.g., In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785, 796 (3d Cir. 1995)). Representation will be considered "adequate" if the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 530 (D. Md. 2001). In a complex lawsuit, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative. *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 430 (4th Cir. 2003).

Smith understands and accepts his responsibilities as class representative and has no interests which are adverse to the Class Members. Further, while initially seeking compensatory and/or statutory damages, Smith and the Class Members seek only statutory damages as the result of NEMF's alleged violations of the FCRA before obtaining a consumer report and/or after taking adverse action based in whole or in part upon the consumer report. Given the identical nature of the claims between Smith and the other Class Members, there is no potential for conflicting interests in this action; there is no disagreement between Smith's interests and those of the Class Members. At the same time, Smith's counsel are experienced in class action litigation and are competent to represent the interests of the class without a conflict

### E.     Rule 23(b)(3) Factors

#### 1.     Predominance

Rule 23(b)(3) of the Federal Rules of Civil Procedure requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *WB Music Corp. v. Rykodisc, Inc.*, No. 94-cv-2902, 1995 U.S. Dist. LEXIS 15866 (E.D. Pa. Oct. 26, 1995); *Lienhart*, 255 F.3d at 142; *Simmons v. Poe*, 47 F.3d 1370, 1380 (4th

Cir. 1995). The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)); *Lienhart*, 255 F.3d at 142. This criterion is normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *Talbott*, 191 F.R.D. at 105.

In this case, the "common nucleus of operative fact" is that all Class Members, by definition, were allegedly not provided notices under the FCRA before a consumer report was obtained and/or before adverse action was taken based in whole or in part upon the consumer report. In this case, with statutory damages arising under identical circumstances for each Class Member, there are almost no individual issues which arise. Rather, the issues which predominate relate exclusively to whether: (1) NEMF's conduct was uniform as to the Class Members, and (2) the relative culpability of NEMF's conduct. Indeed, the certification of this class requires no individualized inquiry into damages. These class-wide issues will predominate and propel this litigation, and as such, the Class meets the predominance standard set forth in Rule 23(b)(3).

### 2. Superiority

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of the controversy under FED. R. CIV. P. 23(b)(3). *Id.* at 615; *Lienhart*, 255 F.3d at 142; *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 529 (W.D. Pa. 1994). The factors to be considered in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability. *See generally*

13

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009)*; see also Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus when determining whether the class action is the superior method for resolving the controversy presented. *Talbott*, 191 F.R.D. at 106. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Triad v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974). "In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." *Advisory Committee Note* to 1996 Amendment to Rule 23. Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit. In so doing, certification enables the court to manage a large number of small and medium sized claims where the awesome costs of discovery and trial could easily prevent any adjudication of those claims and preclude any relief to the class. *See Lozada v Dale Baker Oldsmobile Inc.*, 197 F.R.D. 321, 332-33 (W.D. Mich. 2000).

Smith seeks only statutory damages per violation of no less than $100.00 and no more than $1,000.00. In sum, the amount in controversy for any individual claimant in this class is small, and when compared to the costs of discovery and litigation, this potential recovery pales in comparison. As such, none of the individual Class Members possess any controlling interest in the litigation. Likewise, the absence of any competing classes or other individual claims suggests that without class certification, it is unlikely that the Class Members would obtain any

14

form of relief. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997). In short, unless the Court certifies this class, it is highly probable that the Class Members will receive no relief of any kind.

Because the Court is confronted with a request for settlement-only certification, it "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods.*, 521 U.S. at 620. The names and current addresses of Class Members are obtainable from Sterling Infosystems, Inc. the consumer reporting agency that provided consumer reports to NEMF. Accordingly, settlement is proper so long as the Court finds that the settlement overall is fair, reasonable, and adequate to Class Members. FED. R. CIV. P. 23(e); *see, e.g.*, *Olden v. Gardner*, 294 Fed.Appx. 210, 217 (6th Cir. 2008).

## PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT

Prior to permitting Class Counsel to notify the class of the proposed settlement, the Court must determine whether the proposed settlement meets the requirements of Rule 23. In reviewing a proposed settlement, the Court must determine whether the proposed settlement was the product of legitimate, good faith negotiation, such that notification of the class is justified:

> As part of Rule 23(e)'s "fairness, reasonableness, and adequacy" inquiry the court must first determine whether the terms of the proposed settlement warrant "preliminary approval." See Fed. R. Civ. P. 23(e)(1)(B)-(C). Preliminary approval is a two-step process. See *In re IPO Litig.*, 226 F.R.D. at 191; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102 (citing Fed. R. Civ. P. 23(e); Manual for Complex Litigation (Third) § 30.41 (1995)). First, the court "make[s] a preliminary evaluation of the fairness of the settlement." *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102. Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval, preliminary approval is granted." *Id*.

15

> (citing Manual for Complex Litigation (Third) § 30.41 (1995)); accord *In re IPO Litig.*, 226 F.R.D. at 191. Upon preliminary approval, the court "must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re IPO Litig.*, 226 F.R.D. at 191. At the fairness hearing, "[c]lass members (and non-settling defendants whose rights may be affected by the proposed settlement) then have an opportunity to present their views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is 'fair reasonable, and adequate.'" *Id.* (citing Manual for Complex Litigation (Fourth) § 21.632-21.635 (2004)).

*Bourlas v. Davis Law Assoc.*, 237 F.R.D. 345 (E.D.N.Y. 2006). The preliminary approval process should not constitute a trial of the case on the merits, rather only a determination that the settlement is not the result of overreaching or collusion:

> In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). A preliminary fairness assessment "is not to be turned into a trial or rehearsal for trial on the merits," for "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation. *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982).
> \* \* \*
> As part of this evaluation, the Court may not second guess the settlement terms. *See Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) ("[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel"); *Officers for Justice*, 688 F.2d at 625 ("[t]he proposed settlement is not to be

> judged against a hypothetical or speculative measure of what might have been achieved by the negotiators"). Moreover, when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair. *Vukovich*, 720 F.2d at 923; see *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("[i]n general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997) ("[s]ignificant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'") (internal citations omitted).

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001). Thus, so long as the class appears to be a resolution of a dispute through a legitimate adversarial process, and the result appears fair and reasonable on its face, the Court should grant preliminary approval and order notice to the class. *See also Romstadt v. Apple Comp., Inc.*, 948 F. Supp. 701 (N.D. Ohio 1996).

Here, the proposed settlement was the result of over a year of litigation culminating in two settlement conferences with the Court together with extended discussions between counsel over the course of several months. More importantly, the proposed settlement is fair and reasonable as each Class Member who submits a claim form may receive an amount well beyond the minimum statutory damages range provided by 15 U.S.C. § 1681n. The Stipulation provides that Class Members belonging to the Preliminary Settlement Class may receive an award up to $333.00, whereas Class Members belonging to the Preliminary Settlement Sub-Class may receive an award up to $800.00. The recovery for all Class Members is fair given the risks that the class would not be certified, for among other reasons, potential arguments surrounding the applicable statute of limitations. *See Molina v. Roskam Baking Co.*, No. 1:09-cv-475, 2011 WL 5979087 (W.D. Mich. Nov. 29, 2011) (denying class certification of FCRA claim due to, *inter alia*, individualized statute of limitations inquiry).

17

At the same time, a thirty-percent (30%) fee for Class Counsel falls well within the range of acceptable fee awards as acknowledged by prevailing case law.  The Settling Parties therefore request that the Court grant preliminary approval of the proposed settlement and direct Counsel to give notice to the Class such that the matter may be scheduled for a final fairness hearing before the Court.

## CONCLUSION

The proposed classes meet the requirements of Rule 23(a) as well as Rule 23(b)(3). Smith, with NEMF's consent, respectfully requests that the Court certify this action as a class action, preliminarily approve the proposed settlement of this matter as set forth in the Stipulation of Settlement (Doc. 47) together with the manner and form of notice provided for therein.

    Respectfully Submitted,

    **STUMPHAUZER | O'TOOLE**

By: ____/s/ Anthony R. Pecora_____
    Anthony R. Pecora (0069660)
    Matthew A. Dooley (0081482)
    5455 Detroit Road
    Sheffield Village, Ohio  44054
    Telephone    (440) 930-4001
    Fax:    (440) 934-7208
    Email:    apecora@sheffieldlaw.com
        mdooley@sheffieldlaw.com
    *Counsel for Plaintiff and the putative class*

    **CONNELL FOLEY**

By: _____/s/ Liza M. Walsh_____
    Liza M. Walsh
    Katelyn O'Reilly
    85 Livingston Avenue
    Roseland, New Jersey
    Telephone:    (973) 535-0500
    Facsimile:    (973) 535-9217
    E-mail:    lwalsh@connellfoley.com

Jack L. Kolpen
Irina B. Elgart
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive, Building Three
Lawrenceville, NJ 08648-2311

*Counsel for Defendant New England Motor Freight, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have, on this 30th day of October, 2013, electronically filed the Joint Motion for Preliminary Approval of the Class Settlement, Certification of a Class for the Purposes of Settlement, and Approval of Form and Manner of Notice using the CM/ECF system, which automatically sends email notification to the attorneys of record.

          CONNELL FOLEY

          By: _____*/s/ Liza M. Walsh*_____
                Liza M. Walsh
                Katelyn O'Reilly
                85 Livingston Avenue
                Roseland, New Jersey
                Telephone:   (973) 535-0500
                Facsimile:    (973) 535-9217
                E-mail:        lwalsh@connellfoley.com