IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| LEONARD SMITH, on Behalf of Himself and All Others Similarly Situated<br><br>    Plaintiff,<br><br>    vs.<br><br>**NEW ENGLAND MOTOR FREIGHT, INC.,**<br><br>    Defendant. | CASE NO. 2:12-cv-03559<br><br>UNITED STATES JUDGE WILLIAM J. MARTINI<br><br>MAGISTRATE JUDGE MARK FALK |

**PLAINTIFF'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEY FEES,
REIMBURSEMENT OF EXPENSES
AND INCENTIVE AWARD TO THE NAMED PLAINTIFF**

Named Plaintiff, Leonard Smith by and through counsel, respectfully moves the Court for an Order awarding attorney fees and costs in an amount equal to thirty percent (30%) of the Settlement Fund and an Incentive Award to Smith in the amount of five thousand dollars ($5,000.00). A Memorandum in Support is attached hereto and incorporated herein.

Respectfully Submitted,

FRANCIS & MAILMAN, P.C.

By:     */s/ Erin A. Novak*
        James A. Francis, Esq.
        Erin Novak, Esq.
        Land Title Building, 19th Floor
        100 South Broad Street
        Philadelphia, Pennsylvania  19110
        Email:     Jfrancis@consumerlawfirm.com
                   Enovak@consumerlawfirm.com
        Telephone:  (215) 735-8600
        Fax:        (215) 940-8000

**O'TOOLE McLAUGHLIN DOOLEY & PECORA CO LPA**
Anthony R. Pecora (0069660)
Matthew A. Dooley (0081482)
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone	(440) 930-4001
Fax:	(440) 934-7208
Email:	apecora@omdplaw.com
	mdooley@omdplaw.com

*Counsel for Plaintiff and the putative class*

**MEMORANDUM IN SUPPORT**

Class Counsel request an award of attorney fees and expenses as a percentage of the Settlement Funds[1], to be capped at a gross percentage of thirty percent (30%) of the actual Settlement Funds paid by New England Motor Freight, Inc. ("NEMF") to and for the benefit of the class. Because the Settlement Funds are $870,500.00, Class Counsel seek an attorney fee award inclusive of costs expended to prosecute the litigation in the amount $261,150.00. This sum includes all costs and expenses associated with the case and incurred by Class Counsel. Additionally, the fee is calculated against real dollars and not a purely theoretical claims fund; each dollar is paid to the Class. Last, Class Counsel request an Incentive Award to Smith in the amount of $5,000.00.[2]

**A.   A FEE AWARD OF 30% INCLUSIVE OF EXPENSES COMPARES FAIRLY TO AWARDS IN PREVIOUS CLASS ACTIONS.**

A fee determination should focus on the actual benefit obtained for the class. Here, the benefits are significant where class members are entitled to receive a substantial cash payment through a simple claims process. Manual For Complex Litigation (Fourth) § 21.71 ("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorney fees. The 'fundamental focus is the result actually achieved for class members.' That approach is premised on finding a tangible benefit actually obtained by the class members. In comparing the fees sought by the lawyers to the benefits conferred on the class, the court's task is easiest when class members are all provided cash benefits that are distributed."). The Supreme

---

[1] Capitalized terms shall have the same meaning as defined in the Parties' Stipulation of Settlement (Doc. 47).

[2] The Parties negotiated such an Incentive Award subject to the Court's approval. (Doc. 47, ¶ 8.4).

Court has consistently calculated attorney fees in common funds cases on a percentage-of-the-fund basis. *See Sprague v. Ticonic Nat'l* Bank, 307 U.S. 161, 165-67 (1939); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478-79 (1980); *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984); *see also Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common fund cases have historically been computed based on a percentage of the fund). The Supreme Court has never adopted the lodestar method over the percentage of recovery method in a common fund case, even when lower federal courts began using the lodestar approach in the 1970s. *See e.g. Shaw v. Toshiba Am. Info. Sys., Inc.* 91 F. Supp. 2d 942, 963 (E.D. Tex. 2000); *see also Manual for Complex Litigation* § 24.121 at 210.

Since *Blum,* virtually every Circuit Court of Appeals joined the Supreme Court in affirmatively endorsing the percentage-of-recovery method as an appropriate formula to calculate attorney fees in common fund cases. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047-50 (9th Cir. 2002); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 49 (2d Cir. 2000); *See In re GMC*, 55 F.3d 768, 821-22 (3d Cir. 1995); *In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295, 306 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 515-16 (6th Cir. 1993); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

There is no hard and fast rule as to what percentage of the common fund should be awarded as attorneys' fees. The Third Circuit has observed that fee awards range from 19% to 45% of the settlement fund. *In re GMC,* 55 F.3d at 822; *see also In re Ikon Office Solutions*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). Indeed numerous courts within the Third Circuit and elsewhere have awarded fees of 30% or more of the recovery. *See, e.g., In re Sterling Fin. Corp. Secs. Class*

4

*Action*, No. 07-2171, 2009 U.S. Dist. LEXIS 83224, at *15 (E.D. Pa. 2009) ("After weighing the factors above, it is apparent that a thirty percent attorneys' fee award is reasonable"); *In re ATI Techs., Inc. Sec. Litig.*, No. 01-2541, 2003 U.S. Dist. LEXIS 7062 (E.D. Pa. Apr. 28, 2003) (awarding 30%); *In re EquiMed, Inc. Sec. Litig.*, No. 98-cv-8374 (NS), 2003 U.S. Dist. LEXIS 2998 (E.D. Pa Mar. 3, 2003) (awarding 33-1/3%); *In re Cell Pathways, Inc. Sec. Litig. II*, No. 01-cv-1189, 2002 U.S. Dist. LEXIS 18359 (E.D. Pa. Spt. 24, 2002) (awarding 30%); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 05-MD-1720, 2014 WL 92465, at *6 (E.D.N.Y. Jan. 10, 2014) ("it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million").

Moreover, the requested fee is within the range of three studies relied on by the District Court in *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706 (E.D. Pa. 2001). As the Third Circuit noted in *In re Rite Aid Corp. Sec. Litig.*):

> In comparing this fee request to awards in similar cases, the District Court found persuasive three studies referenced by Professor Coffee: one study of securities class action settlements over $10 million that found an average percentage fee recovery of 31%; a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period that found a median percentage recovery range of 27-30%; and a third study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were "fairly standard." We see no abuse of discretion in the District Court's reliance on these studies.

396 F.3d 294, 303 (3d Cir. 2005) (citation omitted).

Further, "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." 4

5

Newberg on Class Actions § 14:6 (4th ed.). In an analysis of such historic patterns and guidelines, Reagan W. Silber and Frank E. Goodrich explained:

> Although empirical evidence does not necessarily establish what the court should do in a specific case, it provides benchmark standards for the court to determine the reasonableness of a fee award. Because plaintiffs' attorneys must be able to predict the fee determinations that courts are likely to make years later if they are to undertake lengthy and risky litigation on a contingent fee basis, such benchmarks have particular importance in this area of the law.
>
> National Economic Research Associates, an economics consulting firm, recently conducted an analysis of fee awards in class actions. Using data from 656 shareholder class actions that were settled, dismissed, or resolved by a jury verdict from January 1991 to December 1994, the Dunbar Study found that attorneys' fees in these class actions averaged approximately 32% of the recovery, regardless of the case size. When plaintiffs' judicially approved expenses were added to the fee award, the fees and expenses averaged 34.74% of the created fund.
>
> Furthermore, the Federal Judicial Center Study discussed earlier found that in the four districts studied, most fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement. The survey discovered little variation among the four district courts. Although the four districts were geographically and demographically diverse, each court seemed to award fees within the same narrow range of percentages. Although there are only a few cases involving recoveries as high as $40 million, the case law does not reflect a trend toward lower percentages in larger cases.

Reagan W. Silber and Frank E. Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 545-46 (1998).

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common fund cases. *See, e.g., Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) ("We give [a] great deal of deference to a district court's decision to set fees.").

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider "among other things," the following factors in determining a fee award, including:

1. The size of the fund created and the number of persons benefited;

2. The presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel;

3. The skill and efficiency of the attorneys involved;

4. The complexity and duration of the litigation;

5. The risk of nonpayment;

6. The amount of time devoted to the case by plaintiffs' counsel; and

7. The awards in similar cases.

*Id.* at 195 n.1 (citing *Prudential II*, 148 F.3d 283, 336-40 (3d Cir. 1998); *In re GMC*, 55 F.3d at 819-22). These fee award factors "need not be applied in a formulaic way… and in certain cases, one factor may outweigh the rest." *Id.*

Applying these factors to the present case, the requested 30% fee award to Plaintiff's counsel for achieving this highly favorable settlement is both justified and appropriate. As discussed below, Class Counsel successfully negotiated settlement awards for each class – some receiving near the maximum statutory damages - and litigated to maximize the class size to span a five-year period.

### B. THE REQUESTED 30% FEE IS AT THE LOW END OF CONTINGENT FEE ARRANGEMENTS NEGOTIATED IN NON-CLASS LITIGATION

A fee based on the percentage method is also entirely consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fee

arrangements with their clients. As explained in *In re RJR Nabisco Sec. Litig.*, MDL Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992):

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.

*Id*. at *20. If this were a non-class action case, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g., Ikon,* 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *accord Blum,* 465 U.S. at 903 ("in tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (citation omitted) (concurring opinion); *In re U.S. Bioscience Sec. Litig.,* 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's conclusion that 30% would likely have been negotiated in securities action).

Fees of 30% or more are common in private actions. For example, the prominent Houston law firm of Vinson & Elkins prosecuted *ETSI Pipeline Project v. Burlington N., Inc.*, No. B-84-979-CA, 1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 6, 1989), on a one-third contingent fee basis. After obtaining a $1 billion verdict at trial and subsequently settling the case for $635 million, Vinson & Elkins realized a fee of approximately $212 million. In a publicly-filed declaration, an attorney from Vinson & Elkins explained with respect to the fee paid in *ETSI Pipeline*: "Absent a willingness to pay on a current basis, it is my belief that a client with a claim such as the one we prosecuted would be required to offer a significant percentage of the recovery to his counsel in order to obtain representation." Declaration of Harry Reasoner, ¶5 (submitted in *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 779 F. Supp. 1063 (D. Ariz. 1990)).

8

Accordingly, the application of the Gunter factors makes clear that Plaintiffs' Counsel's requested fee of 30% of the Settlement Fund is fair and reasonable.

### C. A CROSS-CHECK OF ATTORNEY TIME SUMMARIES PROVIDE ADDITIONAL SUPPORT FOR CLASS COUNSEL'S REQUEST.

Although a fee cross-check is unnecessary where there is no indication that the fee award is out of proportion with the class settlement, Class Counsel is providing further support for the benefit of the Court. Unlike a traditional Rule 54 lodestar application, a "cross-check" is obtained by a rough estimate of time spent and expenses incurred. Manual For Complex Litigation (Fourth) § 21.724 (In common fund cases, judges sometimes request "an estimate of the number of hours spent on the litigation and a statement of the hourly rates for all attorneys and paralegals who worked on the litigation. Such information can serve as a 'cross-check' on the determination of the percentage of the common fund that should be awarded to counsel.").

The lodestar method, as set forth in the seminal cases *Lindy I* and *Lindy II,* is a two-step process. The first step requires that the Court ascertain the "lodestar" figure by multiplying the number of hours reasonably worked by the reasonable normal hourly rate of counsel. The second step permits the Court to adjust the lodestar by applying a multiple to take into account the contingent nature and risks of the litigation, the results obtained and the quality of the services rendered by counsel. *See Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167-68 (3d Cir. 1973); *Lindy II*, 540 F.2d 102, 112-18 (3d. Cir. 1976); *accord Hensley v. Eckerhart,* 461 U.S. 424 (1983)

To arrive at the lodestar, the hours expended are typically multiplied by each attorney's respective hourly rate. The hourly rate to be applied in calculating the lodestar is that which is normally charged in the community where the attorney practices. *See Blum,* 465 U.S. at 895; *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 590-91 (3d Cir. 1984). In addition, the United States

Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989); *Ikon,* 194 F.R.D. at 195.

In determining whether the rates are reasonable, the Court should take into account the attorneys' legal reputation, experience, and status. The accompanying declarations of Plaintiffs' Counsel include a description of the background and experience of the firms who worked on this case, and support the hourly rates charged in this case.

Calculation of the lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 747 (S.D.N.Y. 1985). In the second step of the analysis, the Court adjusts the lodestar to take into account, among other things, the result achieved, the quality of representation, the complexity and magnitude of the litigation, and public policy considerations. *In re Rite Aid Sec. Litig.,* 396 F.3d at 305-306; *In re Fine Paper Antitrust Litig.*, 751 F.2d at 583; *Prudential II,* 148 F.3d at 341. The Court must then apply the appropriate multiplier to the lodestar number to account for these additional factors.

To perform the lodestar cross-check, the Court should first determine the effective multiplier, and then determine whether the resulting fee would be so unreasonable as to warrant a downward adjustment. As noted, the cumulative lodestar for the services performed by Plaintiffs' Counsel and their paraprofessionals in this action is $141,413.78. Plaintiff's Counsel are seeking an award of 30% of the Settlement Fund which equals $261,150.00. Therefore, the requested fee represents a multiple of only 1.85. This fractional multiplier is much lower than the multipliers applied in other class actions, where multipliers of 3, 4, 5, or even more have been awarded to reflect the contingency fee risk and other relevant factors. *See In re Rite Aid Corp. Sec. Litig.,* 362 F. Supp. 2d 587 (E.D. Pa. 2005) (6.96 multiplier), *In re Aetna, Inc. Sec. Litig.,* MDL No. 1219,

2001 U.S. Dist. LEXIS 68, at *49 (E.D. Pa. Jan. 4, 2001) (3.6 multiplier), *Ikon* 194 F.R.D. at 195 (2.7 multiplier). *See also Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297, 1304 (D.N.J. 1995), *aff'd,* 66 F.3d 314 (3d Cir. 1995) (9.3 multiplier); *Muchnick v. First Fed. Say. & Loan Ass'n of Pa.,* No. 86-1104, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 29, 1986) (8.4 multiplier); *Cosgrove v. Sullivan,* 759 F. Supp. 166 (S.D.N.Y. 1991) (8.74 multiplier); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.,* 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier); *In re Beverly Hills Fire Litig.,* 639 F. Supp. 915, 924 (E.D. Ky. 1986) (5 multiplier); *In re Lomas Fin. Corp. Sec. Litig.,* No. CA 3-89-1962-G (N.D. Tex. Jan. 28, 1992) (4.55 multiplier); *In re Cenco, Inc. Sec. Litig.,* 519 F. Supp. 322 (N.D. Ill. 1991) (multiple of 4); *Keith v. Volpe,* 86 F.R.D. 565 (C.D. Cal. 1980) (multiple of 3.5); *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("most lodestar multiples awarded in cases like this are between 3 and 4"); *Municipal Auth. of Bloomsburg v. Pennsylvania,* 527 F. Supp. 982, 984 (M.D. Pa. 1981) (multiple of 4.5 awarded); *In re Cenco, Inc. Sec. Litig.,* 519 F. Supp. 322 (N.D. Ill. 1981) (4 multiplier). Thus, a 30% fee here, using a lodestar cross-check, is plainly reasonable.

From its inception, this case has been fervently and professionally litigated by both Class Counsel and Defense Counsel. To date, Class Counsel have expended over 300 hours litigating this case. Those hours are divided amongst two lawyers and their respective associates and paraprofessionals, all with vast experience litigating class actions under the Fair Credit Reporting Act. *See* Exhibit A. The case in fact began long before the initial filing of the Complaint, as Class Counsel investigated, researched and interviewed clients for the case as a precondition to initiating litigation. Thereafter, the case proceeded rapidly, as is necessary and effective within the Court's docket. While cases may occasionally settle immediately, this one did not. In fact, Class Counsel

persisted to reopen negotiations after the total Class Size increased in an effort to maintain the maximum benefit for Class Members.   Class Counsel adamantly maintained that the increased Class Size represented a departure from an original settlement, and returned to the Court for additional and protracted negotiations in a successful effort to increase the Settlement Fund.

Although contested litigation required the devotion of substantial time and resources, the mediation, settlement and now class settlement approval process is even more open-ended.  The mediation stage of the case itself took place over several months and was completed only when every term of the filed settlement documents (motion for preliminary approval, motion for final approval, settlement agreement, class notices, etc.) had been negotiated.  Even today, Class Counsel receives direct communications from the 5,843 class members, and expects to continuing receiving communications from Class Members throughout the distribution of the Settlement Funds.  Indeed, Class Counsel routinely expend significant time addressing Class Members' concerns via telephone and in writing *after* requesting an attorney fee award.

Further, the results for each Class Member are remarkable, as Class Counsel negotiated payments as high as $333.00 and $800.00 (nearly the statutory maximum). *See* 15 U.S.C. § 1681n (setting statutory damages at a maximum amount of $1,000.00).  (Doc. 46.1, ¶ 2.4).  These real dollars are distributed to Class Members who completed a most basic claim form, that sought simply to confirm that the Class Member indeed applied for employment with Defendant. Notably, the form was designed in such a manner that 35% percent of notice recipients opted to participate in this class action, 10% more than anticipated by the settling parties.

Additionally, this litigation revolves around a complex statutory scheme, and seeks recovery on behalf of affected consumers nationwide.  Courts across the United States have recognized that the "FCRA is not merely a 'complex statutory scheme' […] but one that has been

said to contain 'almost incomprehensibly complex provisions' and 'esoteric strictures'". *Narog v. Certegy Check Servs.,*, 759 F.Supp.2d 1189 (N.D. Cal. 2011) (citing *Burrell v. DFS Services, LLC,* 753 F. Supp. 2d 438, 440 (D.N.J. 2010) (other internal citations omitted)); *see also Skwira v. U.S.*, 344 F.3d 64 (1st Cir. 2003) (citing the Supreme Court's decision in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001) referring to the FCRA as a "complex statutory scheme"); *see McSherry v. Capital One FSB*, 236 F.R.D. 516, 521 (W.D. Wash. 2006) (stating that courts generally agree that the FCRA is an elaborate, comprehensive legislative scheme).

Moreover, Class Counsel agreed to represent Smith and the Class Members on a contingent basis. Class Counsel did so recognizing the substantial risk that a great deal of time and money could be wasted if unsuccessful; all of the risk and expense was borne by Class Counsel. Even when mediation resulted in a proposed settlement, Class Counsel continued to negotiate for the Class Members upon discovering that the Class Size had increased. In fact, Class Counsel continued these negotiations to obtain additional benefits for the Class Members when a lower recovery could have been accepted.

By any measure the settlement was an excellent result for the class. And while it is true that Class Counsel's requested fee may seem large, it is their success in litigating the case, negotiating the settlement and executing the outcome that justifies such a fee. By either percentage of common fund or a cross-check of the work and expenses incurred, the requested fee is fair.

### C. THE REQUESTED INCENTIVE AWARD FOR SMITH IS FAIR AND REASONABLE.

Generally, it is within the Court's discretion to grant or deny an award of an incentive award. *See Hadix v. Smith,* 322 F.3d 895, 897 (6th Cir. 2003*); see also In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 535 (E.D. Mich. 2003) (Incentive awards for a named plaintiff are "common in class actions"). The Parties have agreed that Smith should receive an

Incentive Award of $5,000.00 deducted from the common fund for his service as the named class representative.  (Doc. 46.1, ¶ 8.4)  Not concerned with personal gain, Smith participated in the drafting of the pleadings and actively assisted Class Counsel in prosecuting the case.  He spent considerable time and effort communicating with Class Counsel regarding Defendant's defensive strategy and the terms of the ultimate settlement.  Indeed, without his participation, the case would not have been filed and relief likely would not have been provided to the Class Members.  *See Bower v. Metlife, Inc.*, 2012 U.S. Dist. LEXIS 149117 at *25-26 (S.D. Ohio Oct. 17, 2012) (Court awarded an incentive award because, as class representatives, the individuals undertook a voluntary obligation to assume responsibilities and duties on behalf of the class.  In doing so, the court noted that the Southern District of Ohio has approved incentive awards in other similar cases); *Birr v. America Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 40665, at *1 (S.D. Ohio April 14, 2011) (Court approved an incentive payment of $5,000 to the class representative); *see also Bert v. AK Steel Corp*, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio 2008) (Court approved a $10,000 incentive award to each class representative); *see also Physicians of Winter Haven LLC v. Steris Corp.*, 2012 U.S. Dist. LEXIS 15581, *15-16 (N.D. Ohio Feb. 6, 2012) (Baughman, J.) ("Courts within this district, however, have recognized that in common fund cases, and where the settlement agreement provides for incentive awards, 'class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled by virtue of class membership alone.'").

**WHEREFORE**, Plaintiff, Leonard Smith, respectfully requests that the Court enter an order awarding Class Counsel $261,150.00 in attorney fees and costs, and an Incentive Award to Smith in the amount of $5,000.00.

Respectfully Submitted,

FRANCIS & MAILMAN, P.C.

By:  */s/ Erin A. Novak*
James A. Francis, Esq.
Erin Novak, Esq.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, Pennsylvania  19110
Email:       Jfrancis@consumerlawfirm.com
             Enovak@consumerlawfirm.com
Telephone:   (215) 735-8600
Fax:         (215) 940-8000


**O'TOOLE McLAUGHLIN DOOLEY & PECORA CO LPA**
Anthony R. Pecora (0069660)
Matthew A. Dooley (0081482)
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone    (440) 930-4001
Fax:         (440) 934-7208
Email:       apecora@omdplaw.com
             mdooley@omdplaw.com

*Counsel for Plaintiff and the putative class*

**CERTIFICATE OF SERVICE**

This will certify that a copy of the foregoing Plaintiff's Motion for an Award of Attorney Fees, Reimbursement of Expenses and Incentive Award to the Named Plaintiff was filed electronically this 29th day of April, 2014.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via regular mail.

      /s/ Erin A. Novak
*Counsel for Smith and the putative class*

G:\27\27292-1\Motions\Motion for Fees (SB Edits).docx